UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

POUYA ESGHAI,

                             Plaintiff,

               -v-

U.S. DEPARTMENT OF STATE, *et al.*,

                        Defendants.

24 Civ. 2993 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

     Plaintiff Pouya Esghai brings this action against the U.S. Department of State; the U.S. Embassy in Yerevan, Armenia; Antony J. Blinken in his official capacity as U.S. Secretary of State; and Kristina Kvien in her official capacity as U.S. Ambassador at the Embassy in Yerevan, Armenia (collectively, the "State Department"). Esghai claims that the State Department has unlawfully delayed its adjudication of the visa application of his mother, Shiva Zojaji. He seeks an order compelling the State Department to issue a "final decision" on her application pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(1), the Mandamus Act, 28 U.S.C. § 1361, and the Fifth Amendment of the U.S. Constitution. The State Department has moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants the State Department's motion to dismiss under Rule 12(b)(6).

## I.    Background

### A.  Statutory and Regulatory Framework

     The following aspects of the statutory and regulatory scheme governing visa applications are germane to Esghai's claims.

A noncitizen typically needs a visa for entry into the United States. 8 U.S.C. §1181(a). Congress sets the terms for entry, which the U.S. Department of State implements at U.S. embassies and consulates in foreign countries. *See, e.g., United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950).

Congress has established a two-step process to obtain an immigrant visa for noncitizens who, like Zojaji, are immediate relatives of a U.S. citizen and are applying from abroad. The citizen-relative must first file a petition with U.S. Citizenship and Immigration Services ("USCIS") to have the noncitizen classified as an immediate relative. 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A). If USCIS approves the petition, then the noncitizen may file a visa application with the U.S. Department of State's National Visa Center ("NVC"), *id* §§ 1201(a), 1202(a); the noncitizen bears the burden to prove her eligibility, *id.* § 1361. If NVC finds that the applicant has submitted the requisite written materials, paid fees, and provided documentation, it transfers the applicant's file to an embassy abroad.

After the file is sent to the embassy abroad, the noncitizen must appear before a consular officer to execute a visa application and be interviewed. 22 C.F.R. § 42.62. Based on that interview and the application materials, the consular officer decides whether to grant or refuse the application. 9 Foreign Affairs Manual ("FAM") § 504.1-3(a), (g).[1] The consular officer, at that point, "must" "issue" or "refuse" the visa. 22 C.F.R. § 42.81(a); *see* 9 FAM § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it."). A consular officer may issue a visa to "an immigrant who has made [a] proper application" demonstrating her eligibility. 8 U.S.C. § 1201(a)(1)(A). A consular officer may not

---

[1] The Foreign Affairs Manual sets out the State Department's "official guidance, including procedures and policies, on matters relating to Department management and personnel[.]" 22 C.F.R. § 5.5; *see* 18 FAM § 201.1-1(B).

2

do so, however, when, *inter alia*, "it appears to the consular officer" that the applicant "is ineligible to receive a visa[.]" *Id.* § 1201(g).  In general, the consular officer "cannot temporarily refuse, suspend, or hold the visa for future action" once the application has been executed.  9 FAM § 504.1-3(g); *id.* § 504.9-2.

### B. Facts[2]

Esghai is a U.S. citizen, and his mother, Zojaji, is a citizen of Iran.  Compl. ¶¶ 10, 12.  On February 22, 2021, Esghai filed a petition with USCIS to have Zojaji classified as an immediate relative. *Id.* ¶ 13.  In or about May 2021, USCIS approved Esghai's petition. *Id.* ¶ 15.  After NVC processed Zojaji's application, it scheduled her for an interview with a consular officer at the U.S. Embassy in Yerevan, Armenia. *Id.* ¶¶ 16–17.

On or about August 14, 2023, a consular officer interviewed Zojaji at the U.S. Embassy in Yerevan. *Id.* ¶ 17.  Zojaji was not granted a visa after the interview. *Id.*  Sometime after the interview, at the consular officer's request, Zojaji submitted additional information. *Id.*  The Complaint does not disclose the nature of this additional information or whether Zojaji has received further communication from the State Department as to the status of her application.

As of the filing of the Complaint—eight months after the interview—Zojaji remained without permission to enter the United States. *Id.* ¶ 31.

---

[2]  The facts in this section are all drawn from the Complaint, Dkt. 1, whose recitation of facts is sparse.  In resolving a Rule 12(b)(1) motion, however, the Court may consider evidence outside the pleadings, such as affidavits and exhibits. *See Cangemi v. United States*, 13 F.4th 115, 129 (2d Cir. 2021) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Accordingly, in Section II.A.2 of this decision, which considers the State Department's Rule 12(b)(1) motion, the Court also takes into account facts contained in the declaration the State Department submitted in support of its motion to dismiss, Dkt. 16.

### C. Procedural History

On April 19, 2024, Esghai filed the Complaint.  It alleges unlawful delay by the State Department in rendering a "final decision" on Zojaji's application.  Dkt. 1.  It seeks injunctive and/or declaratory relief action under the Administrative Procedure Act, 5 U.S.C. § 706(1), the Mandamus Act, 28 U.S.C. § 1361, and the Fifth Amendment of the U.S. Constitution, U.S. Const. amend. V.  Compl. at 4–7.

On July 12, 2024, the State Department moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Dkt. 15, and filed a supporting memorandum of law, Dkt. 17 ("Defs.' Br."), and declaration, Dkt. 16 ("Peterson Decl.").  The same day, the Court directed Esghai to file any amended complaint or opposition to the motion by August 2, 2024.  Dkt. 18.  After an extension, on August 22, 2024, Esghai filed a memorandum of law in opposition and declaration in support. Dkt. 38 ("Pl.'s Br.").  On September 6, 2024, the State Department filed its reply.  Dkt. 39 ("Defs.' Reply Br.").

## II.    Discussion

The State Department argues that the Court lacks subject matter jurisdiction over Esghai's claims because they are (1) barred by the consular nonreviewability doctrine and (2) moot, requiring dismissal under Rule 12(b)(1).  Alternatively, it argues, Esghai's Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim.

Because a federal court must confirm its subject matter jurisdiction before reaching the merits, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), the Court begins with the State Department's jurisdictional arguments.

4

### A. 12(b)(1) Motion

#### 1. Applicable Legal Standards

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Pursuant to Rule 12(b)(1), dismissal for lack of subject matter jurisdiction is appropriate if the Court determines that it lacks the constitutional or statutory power to adjudicate the case." *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015); *see Makarova*, 201 F.3d at 113.

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 Fed. App'x 24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation marks omitted), although "jurisdiction must be shown affirmatively," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

#### 2. Consular Nonreviewability

The State Department invokes first the doctrine of consular nonreviewability. Under that doctrine, "as a rule," a federal court "cannot review" "a consular officer's denial of a visa." *Dep't of State v. Munoz*, 144 S. Ct. 1812, 1820 (2024). The doctrine "recognize[s] that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control'" and that the "Judicial Branch has no role to play 'unless expressly authorized by law.'" *Id.* (quoting *Trump v.*

5

*Hawaii*, 585 U.S. 667, 702 (2018) and *Knauff*, 338 U.S. at 543); *see also, e.g.*, *Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d. Cir. 1978).

Contrary to the State Department's argument, consular nonreviewability does not require dismissal for lack of subject matter jurisdiction. Earlier this year in *Department of State v. Munoz*, the Supreme Court reaffirmed that "the doctrine of consular nonreviewability is not jurisdictional." 144 S. Ct. at 1820 n.4; *see also, e.g.*, *Hawaii*, 585 U.S. 682–83; *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009) (noting that "the term 'jurisdiction' is often used imprecisely," and concluding that subject matter jurisdiction existed despite applicability of consular nonreviewability). Rather, "[d]ismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021).

### 3. Mootness

The State Department next argues that this case has become moot and "must be dismissed" because Esghai has already obtained the relief he seeks: adjudication of Zojaji's visa application. Gov't Br. at 8.

"Article III demands that an actual controversy persist throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (internal quotation marks omitted). The doctrine of mootness "addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit" such that the case is no longer a "Case" or "Controversy" for purposes of Article III. *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (cleaned up). When "events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it," a federal court is required to "dismiss the case as moot." *FBI v. Fikre*, 601 U.S. 234, 240–41 (2024) (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). The party asserting that a

6

case is moot "bears the burden to establish that a once-live case has become moot." *West Virginia*, 597 U.S at 719.

The State Department has not carried that burden here. Relying on the Peterson Declaration, it argues that Esghai already obtained a "final decision" because the consular officer at the embassy in Yerevan "refused" Zojaji's visa on August 14, 2023. Gov't Reply Br. at 2; *see* Peterson Decl. ¶ 9 ("On the same date [as her interview], on consideration of the record before the consular officer, the officer refused Ms. Zojaji's visa application under INA § 221(g), 8 U.S.C. § 1201(g)." (capitalization altered)). But the consular's officer refusal does not deprive Esghai of a personal stake in this litigation because he seeks different relief here: a further decision on Zojaji's application. Although Esghai at times loosely asserts that the State Department has yet to "adjudicate" Zojaji's application, *e.g.*, Compl. ¶ 22, his request for relief is more precise. He seeks a judicial remedy with respect to the State Department's actions *after* the August 14, 2023 refusal. *See id.* at 6 (request for relief). In particular, he seeks a court order compelling reconsideration of Zojaji's already-refused application in light of additional information that she submitted after the interview. And Esghai's Complaint alleges that the State Department has not yet acted on that information (which, he maintains, it is obligated to do). Compl. ¶¶ 17–18; *see* Peterson Decl. ¶ 9 ("As of the date of this declaration, [Zojaji's application] remains refused under INA § 221(g), 8 U.S.C. § 1201(g), and may be reconsidered in light of additional security screening, including but not limited to the applicant's responses to the questions found on Form DS-5535."). Thus, the consular officer's refusal determination under INA § 221(g)—rendered eight months before Esghai filed this action—was not an "intervening circumstance" that caused mootness. *West Virginia*, 597 U.S at 719; *see also, e.g.*,

*Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) (per curiam) (considering like claim on the merits).

The Court therefore denies the State Department's Rule 12(b)(1) motion.

### B. Rule 12(b)(6) Motion

#### 1. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

#### 2. APA Claim

Esghai brings a claim of agency inaction under Section 706(1) of the APA, seeking an order compelling the State Department to issue a "final decision" on Zojaji's visa application. Compl. ¶¶ 17, 21. As noted, by "final decision," Esghai means some further decision on Zojaji's already-refused application. The State Department argues that it does not owe a duty to Esghai that is enforceable under § 706(1). *See* Defs.' Br. at 15–16. Zojaji's application, the State

Department maintains, already has been adjudicated because the consular officer refused it, and there is no further action that it is legally required to take. *Id.*; Defs.' Reply Br. at 8.

The State Department is correct.

Section 706(1) of the APA authorizes courts to "compel agency action unlawfully withheld." 5 U.S.C. § 706(1). The Supreme Court has held that the "only agency action that can be compelled under the APA is action legally required." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004). Consequently, a § 706(1) claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Id.* at 64; *see also, e.g.*, *Benzman v. Whitman*, 523 F.3d 119, 130 (2d Cir. 2008) ("[L]ike the power to grant writs of mandamus, '§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'").

Esghai's APA claim founders because he does not identify any legally required, discrete action that the State Department has failed to perform. The INA requires that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). After a visa application has been "properly completed" and "executed before a consular officer," the consular officer "*must* issue the visa" or "refuse the visa." 22 C.F.R. § 42.81 (emphasis added); 8 U.S.C. § 1201(g). A consular officer "cannot temporarily refuse, suspend, or hold the visa for future action" after the interview. 9 FAM § 504.1-3(g); *id.* § 504.9-2. Esghai acknowledges that Zojaji was not issued a visa after her interview, Compl. ¶ 17, and that she lacks permission to enter the United States, *id.* ¶ 31, because her application was "refuse[d]" under 22 C.F.R. § 42.81. *See* 9 FAM § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it.");

*Alharbi v. Miller*, 368 F. Supp. 3d 527, 557–59 (E.D.N.Y. 2019) ("[T]here is no third option.
The visa must be issued or refused."); *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *2
(D.C. Cir. July 24, 2024) (same). The State Department thus satisfied its duty to "adjudicate[]"
Zojaji's application under the INA. 8 U.S.C. § 1202(d).

Resisting this conclusion, Esghai invokes § 555(b) of the APA as a source of the State
Department's ostensible duty to revisit its refusal of Zojaji's application. Pl.'s Br. 7–8. Section
555(b) is an "[a]ncillary" provision stating that "each agency shall proceed to conclude a matter
presented to it" "[w]ith due regard for the convenience and necessity of the parties or their
representatives and within a reasonable time[.]" 5 U.S.C. § 555(b). It bespeaks "a congressional
view that agencies should act within reasonable time frames[.]" *Telecommunications Research
& Action Center v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984); *see* Attorney General's Manual on
the Administrative Procedure Act 65 (1947) (describing earlier version of Section 555(b) as
"merely restat[ing] a principle of good administration").

Esghai's reliance on § 555(b) is misplaced, for multiple reasons. First, the "matter" of
adjudicating Zojaji's application has already been "conclude[d]" by the State Department in the
manner prescribed by the INA: A consular officer reviewed her application, interviewed her,
and refused her application. *See* 8 U.S.C. § 1202(d) ("All nonimmigrant visa applications shall
be reviewed and adjudicated by a consular officer."). To the extent Esghai characterizes Zojaji's
application as pending, he mischaracterizes the outcome of the consular officer's interview of
Zojaji on August 14, 2023: her application was refused under INA § 221(g), 8 U.S.C. §1201(g).
*See* 22 C.F.R. § 42.81; Compl. ¶¶ 17, 31. The D.C. Circuit has explained:

> There is no such thing as an informal refusal or a pending case once a formal
> application has been made. . . . [A] refusal may (or may not) be overcome with new
> information at a later date. If the consular officer gets enough new information,
> sometimes from sources other than the applicant, the officer can determine *sua*

*sponte* that the administrative processing is "completed" and may then re-open and re-adjudicate the applicant's case. Unless and until that happens, though, the visa application remains officially refused.

*Karimova*, 2024 WL 3517852, at *2 (citations omitted); *Meleo v. Blinken*, No. Civ. 23-3495, 2024 WL 4345289, at *8 (D.N.J. Sept. 30, 2024) ("[A]n application refused and placed in administrative processing is officially refused."); *Alharbi*, 368 F. Supp. 3d at 557–59. Although the State Department might in its discretion revisit a consular officer's refusal in light of new information, it is nowhere "required" to do so. *Norton*, 542 U.S. at 63; *see also, e.g.*, *Munoz*, 144 S. Ct. at 1820 ("Congress may delegate to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.'" (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–91 (1952))). And, on the facts pled, Esghai's claim that the State Department is legally required to take further action based on Zojaji's post-refusal submission is an *ipse dixit*. *Id.* The Complaint does not plead any facts about the additional information submitted by Zojaji, whether such information related to the ground(s) on which her application was refused, or whether the State Department in fact re-opened Zojaji's file based on this information. Nor does it point to any representations by the State Department to the effect that it has undertaken to reconsider Zojaji's application. The Complaint's allegations do not support that the State Department has a legal duty to re-open and re-adjudicate her case.

Second, § 555(b)'s "nonspecific" directive does not "place upon consular officers a crystal-clear legal duty" to revisit an already-refused visa application, given "that consular officers have broad discretion when adjudicating visa applications." *Karimova*, 2024 WL 3517852, at *2. The Second Circuit long ago held that "that the judiciary will not interfere with the visa-issuing process." *Hsieh v. Kiley*, 569 F.2d 1179, 1181 (1978); *see also, e.g.*, *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1162 (D.C. Cir. 1999) ("When it comes to matters touching on

11

national security or foreign affairs—and visa determinations are such matters—the [APA's] presumption of review 'runs aground.'" (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988))); *Goodluck v. Biden*, 104 F.4th 920, 926 (D.C. Cir. 2024) ("Historical and contextual considerations . . . warrant restraint" in the court's exercise of remedial authority in this area). In so holding, courts have recognized the deference owed the political branches in a field that is "vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power." *Harisiades*, 342 U.S. at 588–89; *see also, e.g.*, *Munoz*, 144 S. Ct. at 1820 ("[T]he action of an executive officer to admit or to exclude [a noncitizen] is final and conclusive."); *Hsieh*, 569 F.2d at 1181 (Congress has the "power . . . to exclude [noncitizens] altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention."). That precept is also reflected in Congress's determination to not afford judicial review for noncitizens outside the country, like Zojaji, "to challenge a decision of a consular officer . . . to grant or deny a visa." 6 U.S.C. § 236(f). Indeed, Congress has made decisions by consular officers to deny visas to noncitizens applying abroad not reviewable even by the Secretary of State. *See id.* § 236(b)(1) ("[T]he Secretary shall not have authority to alter or reverse the decision of a consular officer to refuse a visa to an alien."). The statutory framework thus undermines Esghai's claim that § 555(b) requires the State Department to revisit its refusal of Zojaji's application.

For these reasons, courts in this Circuit have routinely declined to intervene in the "visa-issuing process" even where the immigration agency had not acted at all on the application at issue. *Abdo v. Tillerson*, No. 17 Civ. 7519, 2019 WL 464819, at *2–3 (S.D.N.Y. Feb. 5, 2019) (quoting *Hsieh*, 569 F.2d at 1181); *see Al Naham v. U.S. Dep't of State*, No. 14 Civ. 9974, 2015

WL 3457448 at *3 (S.D.N.Y. June 1, 2015); *Foad v. Holder*, 13 Civ. 6049, 2015 WL 1540522, at *3 (E.D.N.Y. Apr. 7, 2015); *Saleh v. Holder*, 84 F. Supp. 3d 135, 138 (E.D.N.Y. 2014); *Li v. Chertoff*, No. 6 Civ. 13679, 2007 WL 541974, at *1 (S.D.N.Y. Feb. 16, 2007); *Dong v. Ridge*, No. 2 Civ. 7178, 2005 WL 1994090, at *3 (S.D.N.Y. Aug. 18, 2005).

In sum, Esghai's APA claim fails because the State Department *has* taken action here: It refused Zojaji's application, and there is no legal basis for Esghai's bid to compel further action on the already-refused application. The circumstances pled here are far afield from those in the paradigmatic unreasonable delay case, where an agency legally required to take a discrete action has failed to act.[3] The Court dismisses Esghai's claim under 5 U.S.C. § 706(1).

### 3. Mandamus Claim

Esghai separately seeks a writ of mandamus requiring the State Department to render a "permanent decision" on Zojaji's visa application under 28 U.S.C. § 1361. In moving to dismiss, the State Department argues that the Complaint fails to state a claim for mandamus relief because (1) his request is duplicative of the APA claim; and (2) the State Department does not owe him a "crystal clear legal duty" to revisit the consular officer's refusal of Zojaji's application. The State Department is again correct.

---

[3] Even assuming *arguendo* that Esghai adequately pled that the State Department had a duty to act, the Complaint falls short of supporting that any delay by the agency was "unreasonable" under *TRAC*, 750 F.2d at 80, because it merely alleges that eight months had passed since Zojaji submitted additional information. "It is settled … that the mere passage of time cannot sustain a claim of unreasonable delay. Courts have held delays in the vicinity of five years in the adjudication of immigration benefits not to be unreasonable as a matter of law." *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 261 (E.D.N.Y. 2021); *see Kaur v. Mayorkas*, No. 22 Civ. 4514 (PAE), 2023 WL 4899083, at *7 (S.D.N.Y. Aug. 1, 2023) (similarly summarizing case law in this District); *Cohen v. Jaddou*, No. 21 Civ. 5025, 2023 WL 2526105, at *5 (S.D.N.Y. Mar. 15, 2023) (same); *Aydemir v. Garland*, No. 22 Civ. 100, 2022 WL 4085846, at *4 (S.D.N.Y. Sept. 6, 2022) (same); *Ahmed v. Bitter*, No. 23 Civ. 189, 2024 WL 22763, at *9 (E.D.N.Y. Jan. 2, 2024) ("The burden is on the Plaintiff to plausibly allege unreasonable delay, and other than the passage of time, Plaintiff has given the court no basis on which to conclude that the process of adjudicating her petition has been unreasonably prolonged or delayed.").

13

Under 28 U.S.C. § 1361, a federal court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361; *see Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (a writ of mandamus is among "the most potent weapons in the judicial arsenal"). But the extraordinary remedy of mandamus may be awarded "only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman*, 523 F.3d at 133.

Esghai's claim fails for two independent reasons. First, "[w]here mandamus relief is duplicative of an APA claim, it must be dismissed." *Kaur v. Mayorkas*, No. 22 Civ. 4514, 2023 WL 4899083, at *13 (S.D.N.Y. Aug. 1, 2023) (citing *Sheiner v. Mayorkas*, No. 21 Civ. 5272, 2023 WL 2691580, at *10 (S.D.N.Y. Mar. 29, 2023)); *Benzman*, 523 F.3d at 132–33 (upholding dismissal of mandamus claim where it duplicated the APA count, "both as to the underlying allegedly mandatory duties and as to the relief sought"). Further, a "[p]laintiff cannot pursue a Mandamus claim when an adequate remedy is available under the APA . . . . This is true even though [p]laintiff failed to adequately plead that alternative remedy." *Cohen v. Jaddou*, No. 21 Civ. 5025, 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023) (citations omitted). Courts in this Circuit have consistently so held. *See, e.g.*, *Ying Yu Liu v. Wolf*, No. 19 Civ. 410, 2020 WL 2836426, at *10 (S.D.N.Y. May 30, 2020); *Lyons v. United States Citizenship & Immigr. Servs.*, No. 21 Civ. 3661, 2023 WL 144879, at *9 (S.D.N.Y. Jan. 10, 2023); *Luo v. United States Citizenship & Immigr. Servs.*, No. 23 Civ. 1104, 2023 WL 5672041, at *3 (E.D.N.Y. Sept. 1, 2023); *see also Benzman*, 523 F.3d at 132–33; *Sharkey v. Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008).

Second, as the Court has noted, Esghai's allegations do not support that the State

Department "owes him 'a clear nondiscretionary duty'" to revisit the consular officer's refusal of

Zojaji's application. *Escaler v. U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 292 (2d Cir.

2009) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)); *accord Duamutef v. INS*, 386 F.3d

172, 180 (2d Cir. 2004); *Rahman v. Jaddou*, No. 22-101, 2022 WL 6593589 (2d Cir. Oct. 11,

2022); *see also Interstate Com. Comm'n v. N.Y., N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932)

("Where a duty is not plainly prescribed, but is to be gathered by doubtful inference from statutes

of uncertain meaning, it is regarded as involving the character of judgment or discretion, and

mandamus is thereby excluded.").

### 4. Due Process Claim

The Complaint also alleges that the State Department's "combined failures" as to Zojaji's

application violate the Due Process Clause of the Fifth Amendment. Compl. ¶¶ 29–30. Because

Zojaji is a noncitizen, she does not have a constitutional right to enter the United States. *See,

e.g., Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). Esghai's due process claim is therefore

based on the theory that *Esghai* has a constitutionally protected "interest and right" in Zojaji's

visa application given the hardship caused by "family separation." Pl.'s Br. at 22–23. Esghai

argues that the State Department's alleged delay in reconsidering Zojaji's application violated his

procedural due process right with respect to this liberty interest.

The State Department counters that Esghai does not have a constitutionally protected

interest in bringing his noncitizen mother to the United States and thus lacks a procedural due

process right with respect to the Zojaji's visa proceedings. Def.'s Reply Br. at 10. Esghai's

claim is precluded by binding precedent.

The Due Process Clause requires the Government to provide due process of law before it

deprives a person of "life, liberty, or property." U.S. Const. amend. V. A party invoking the

Clause's protection must first identify a deprivation of "life, liberty, or property." *Munoz*, 144 S.
Ct. at 1821–22; *see also Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 197–98 (2d Cir. 2022);
*Saleh v. Tillerson*, 293 F. Supp. 3d 419, 426 (S.D.N.Y. 2018). Where a party cannot identify a
protected interest at stake, then the Clause is not implicated. *See, e.g., Perry v. McDonald*, 280
F.3d 159 (2d Cir. 2001) ("In evaluating due process claims, the threshold issue is always whether
the plaintiff has a property or liberty interest protected by the Constitution. *If* a protected interest
is identified, a court must then consider whether the government deprived the plaintiff of that
interest without due process." (emphasis in original) (internal quotation marks omitted)). Where,
as here, a party's due process claim is based on an unenumerated constitutional right, the claim
must satisfy the two-step test set out in *Washington v. Glucksberg*, 521 U.S. 702 (1997). *See*
*Munoz*, 144 S. Ct. at 1821–22. The *Glucksberg* test (1) "insists on a 'careful description of the
asserted fundamental liberty interest,'" and (2) "stresses that 'the Due Process Clause specially
protects' only 'those fundamental rights and liberties which are, objectively, deeply rooted in this
Nation's history and tradition.'" *Munoz*, 144 S. Ct. at 1822 (quoting *Glucksberg,* 521 U.S. at
720–21).

    Apposite here, earlier this year, the Supreme Court considered a procedural due process
claim arising from the adjudication of a family member's visa application. In *Munoz, supra*, the
Court weighed whether the Due Process Clause entitled a U.S. citizen (Munoz), to be informed
of the reason for a consular officer's denial of her noncitizen spouse's visa application. *See* 144
S. Ct. at 1817. Munoz's claim, the Court reasoned, was based on the premise that she had "an
unenumerated constitutional right" to "bring her noncitizen spouse to the United States." *Id.* at
1817–18. The Court held that Munoz's claim failed the second step of the *Glucksberg* test. *Id.*
at 1822–23. Munoz had not demonstrated that the "right to bring a noncitizen spouse to the

United States is 'deeply rooted in this Nation's history.'" *Id.* 1822 (quoting *Glucksberg,* 521 U.S. at 720–21). On the contrary, the Court explained, "the through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens," and that "qualifications and restrictions" on spousal immigration, including bars on admissibility, "have long been the norm." *Id.* at 1823. Given "Congress's longstanding regulation of spousal immigration" and the "national security and foreign policy" interests it implicates, the Court held, "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." *Id.* at 1818, 1821, 1825; *accord Kerry v. Din,* 576 U.S. 86, 93–97 (2015) (plurality opinion).

     *Munoz* controls this case. Esghai's Complaint pleads that he has a Due Process right to seek redress for the State Department's "failures to provide a reasonable and just framework of adjudication." Compl. ¶ 29. But that is "a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id.* Esghai's premise that he has a liberty interest in his noncitizen mother's visa application is, like Munoz's similar premise with respect to her noncitizen spouse, unsupported. Neither asserted right is "'deeply rooted in this Nation's history and tradition.'" *Munoz*, 144 S. Ct. at 1822 (quoting *Glucksberg,* 521 U.S. at 720–21). Esghai has not identified any case recognizing a citizen's constitutional right to the admission of a noncitizen mother. He does not argue that the history of immigration regulation supports inferring such a right. Nor does he articulate an alternative liberty interest germane to his request for relief.

     Esghai's due process claim, like Munoz's, thus fails the second step of *Glucksberg*. *Id.* This holding is consistent with pre-*Munoz* case law in this Circuit, which uniformly rejected

attempts to assert a due process right in the adjudication of a relative's visa application. *See, e.g., Nawaz v. Dep't of State*, No. 22 Civ. 5343, 2024 WL 99486, at *5 (E.D.N.Y. Jan. 9, 2024) ("Plaintiff has failed to sufficiently allege . . . a recognized protected liberty interest or that she has been deprived of process to which she is due."); *Ahmed v. Bitter*, No. 23 Civ. 189, 2024 WL 22763, at *9 (E.D.N.Y. Jan. 2, 2024) ("Plaintiff has not shown that she has a protected liberty or property interest that the Government has deprived without due process, and her procedural due process rights are therefore not implicated."); *Nurjahan v. Dep't of State*, No. 22 Civ. 2692, 2023 WL 2931581 (E.D.N.Y. Apr. 13, 2023) ("Plaintiff fails to plausibly allege that she has been deprived of a protected interest due to the denial of procedural protections to which she was entitled."); *Lleshi v. Kerry*, 172 F. Supp. 3d 196, 201 (S.D.N.Y. 2015) ("[V]isas do not constitute a life, liberty or property interest sufficient to invoke the protections of due process"); *cf. Gadria v. Gantner*, No. 5 Civ. 6621, 2008 WL 650369, at *4 (S.D.N.Y. Mar. 6, 2008) ("[I]n order to make a valid due process claim, a claimant must show a constitutionally protected liberty or property interest in the outcome of the proceedings. Where an administrative scheme does not require a certain outcome, but merely authorizes discretionary grant of remedies, the scheme does not create such an interest." (citing *Perry v. McDonald*, 280 F.3d 159, 173-75 (2d Cir. 2001)); *Zhao v. Chertoff*, 2009 WL 700709, at *3 (E.D.N.Y. Mar. 15, 2009).

The Court therefore dismisses the Complaint's due process claim for failure to plausibly allege the deprivation of a protected interest.

### 5.    Request for Declaratory Relief

Finally, Esghai's Complaint asks the Court to "take jurisdiction and adjudicate [Zojaji's] visa pursuant to this Court's declaratory judgment authority." Compl. at 6. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), however, "does not by itself confer subject matter jurisdiction on the federal courts." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*,

442 F.3d 767, 769 (2d Cir. 2006); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–

72 (1950). It "is procedural in nature, and merely offers an *additional remedy* to litigants." *Nat'l*

*Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) (emphasis in original). Having

found that the Complaint does not state a plausible claim for relief under the APA, the

Mandamus Act, or the Constitution, the Court dismisses its prayer for declaratory judgment.

*See, e.g.*, *Xu v. Cissna*, 434 F. Supp. 3d 43, 60–61 (S.D.N.Y. 2020); *Yueliang Zhang v. Wolf*, No.

19 Civ. 5370, 2020 WL 5878255, at *7 (E.D.N.Y. Sept. 30, 2020).

## CONCLUSION

For the foregoing reasons, the Court grants the State Department's motion and dismisses

the Complaint. The Clerk of Court is respectfully directed to close the motion pending at

Docket 15.


SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 12, 2024
        New York, New York

19